Chief Judge KOZINSKI,
dissenting from the denial of rehearing en banc:
I have little doubt that the Supreme Court will thwart this latest attempt to interfere with the State of Arizona’s efforts to carry out its lawful sentence and bring Wood to justice for the heinous crimes he committed a quarter century ago. There is little I can add to the irrefutable arguments in Judge Bybee’s dissent and Judge Callahan’s dissental. If Baze could not get a stay of execution under the Eighth Amendment, see Baze v. Rees, 553 U.S. 35, 62-63, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), Wood certainly is not entitled to one under the First.
I take the occasion to point out how we got here. Until about three decades ago, executions were carried out by means designated for that purpose alone: electric chairs were the most common, but gas chambers, hanging and the occasional firing squad were also practiced. See generally Kirk Johnson, In Utah, Execution Evokes Eras Past, N.Y. Times, June 16, 2010, available at http://goo.gl/duIwV0 (discussing Gary Mark Gilmore’s execution by firing squad). Most of these means were challenged on Eighth Amendment grounds, but the challenges were largely unsuccessful. See Poyner v. Murray, 507 U.S. 981, 981, 113 S.Ct. 1573, 123 L.Ed.2d 142 (1993) (denying stay of execution by electric chair); Stewart v. LaGrand, 525 U.S. 1173, 1173, 119 S.Ct. 1107, 143 L.Ed.2d 106 (1999) (vacating stay of lethal gas execution); Campbell v. Wood, 18 F.3d 662, 687 (9th Cir.1994) (hanging); Wilkerson v. Utah, 99 U.S. 130, 131-36, 9 Otto 130, 25 L.Ed. 345 (1879) (firing squad). Nevertheless, starting in the late 1970s, states began moving away from these traditional methods of execution and towards using drugs as execution tools. Perhaps this was done in the belief that it would forestall a constitutional challenge to the method of execution; perhaps it was thought to be more humane; and perhaps it was thought to be less brutal. Whatever the reason, the federal government and all states that retain capital punishment now authorize the use of drugs for that purpose, and generally it is the default method of execution.
Whatever the hopes and reasons for the switch to drugs, they proved to be misguided. Subverting medicines meant to heal the human body to the opposite purpose was an enterprise doomed to failure. Today’s case is only the latest in an unending effort to undermine and discredit this method of carrying out lawful executions. Another symptom of the problem is the decade-long inability (or perhaps unwillingness) of California state officials to come up with an execution protocol, effectively putting the state’s death chamber out of commission. See Jones v. Chappell, No. CV 09-02158-CJC, slip op. at 5 n.7, 2014 WL 3567365 (C.D.Cal. July 16, 2014). Old age, not execution, is the most serious risk factor for inmates at the San Quentin death row. Then, again, you get odd cases like that of Russell Bucklew, who obtained a stay of execution on the ground that the drugs that would be used to kill him would cause a lingering, painful death. See Bucklew v. Lombardi, — U.S. -, 134 S. Ct. 2333, 2333, 189 L.Ed.2d 206 (2014).
Whatever happens to Wood, the attacks will not stop and for a simple reason: The enterprise is flawed. Using drugs meant for individuals with medical needs to carry *1103 out executions is a misguided effort to mask the brutality of executions by making them look serene and peaceful — like something any one of us might experience in our final moments. See Collins v. Collins, 510 U.S. 1141, 1143, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994) (Scalia, J., concurring in denial of certiorari) (“How enviable a quiet death by lethal injection .... ”). But executions are, in fact, nothing like that. They are brutal, savage events, and nothing the state tries to do can mask that reality. Nor should it. If we as a society want to carry out executions, we should be ■willing to face the fact that the state is committing a horrendous brutality on our behalf.
If some states and the federal government wish to continue carrying out the death penalty, they must turn away from this misguided path and return to more primitive — and foolproof — methods of execution. The guillotine is probably best but seems inconsistent with our national ethos. And the electric chair, hanging and the gas chamber are each subject to occasional mishaps. The firing squad strikes me as the most promising. Eight or ten large-caliber rifle bullets fired at close range can inflict massive damage, causing instant death every time. There are plenty of people employed by the state who can pull the trigger and have the training to aim true. The weapons and ammunition are bought by the state in massive quantities for law enforcement purposes, so it would be impossible to interdict the supply. Amd nobody can argue that the weapons are put to a purpose for which they were not intended: firearms have no purpose other than destroying their targets. Sure, firing squads can be messy, but if we are willing to carry out executions, we should not shield ourselves from the reality that we are shedding human blood. If we, as a society, cannot stomach the splatter from an execution carried out by firing squad, then we shouldn’t be carrying out executions at all.
While I believe the state should and will prevail in this case, I don’t understand why the game is worth the candle. A tremendous number of taxpayer dollars have gone into defending a procedure that is inherently flawed and ultimately doomed to failure. If the state wishes to continue carrying out executions, it would be better to own up that using drugs is a mistake and come up with something that will work, instead.